Kathy D. HOLLER, Plaintiff,

v.

**HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY,**
**Defendant.**

**Case No. 1:06–cv–764.**

United States District Court,
S.D. Ohio,
Western Division.

Aug. 27, 2010.

Order Denying Motion to Alter
Judgment Nov. 22, 2010.

Michael A. Roberts, Graydon Head & Ritchey, Cincinnati, OH, for Plaintiff.

Douglas R. Dennis, Ann Elizabeth Georgehead, Frost Brown Todd LLC, Michael A. Roberts, Graydon Head & Ritchey, Cincinnati, OH, Robert Leo Steinmetz, Gwin, Steinmetz, Miller & Baird PLLC, Louisville, KY, for Defendant.

**DECISION AND ENTRY: (1) ADOPTING THE REPORT AND RECOMMENDATIONS OF THE UNITED STATES MAGISTRATE JUDGE (Doc. 31); and (2) GRANTING PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS (Doc. 26)**

TIMOTHY S. BLACK, District Judge.

This civil action is before the Court upon the Report and Recommendations (Doc. 31) of United States Magistrate Judge Timothy S. Hogan regarding Plaintiff's motion for judgment as a matter of law (Doc. 26) and responsive memoranda (Docs. 27, 29). Subsequently, Defendant filed Objections to the Report and Recommendations (Doc. 34) and Plaintiff filed a memorandum *contra* (Doc. 36). Also before the Court is the Administrative Record which is comprised of Hartford's Long Term Disability Benefits Plan documents (AR 1–23) and the documents which constitute Plaintiff's claims file (ADM 1–1441).[1]

## I. BACKGROUND FACTS

Plaintiff was employed by Flour Daniel Fernald from 1992–2001. In October 1999, Plaintiff applied for long term disability benefits under a group insurance policy issued and administered by Defendant.

Plaintiff's claim was based on diagnoses of fibromyalgia, thoracic outlet syndrome, and lower back pain. She was initially approved for an award of benefits under Hartford's Long Term Disability Benefits Plan ("the Hartford Plan") in December 1999. In December 2000, Defendant determined that Plaintiff was no longer disabled under the terms of the Plan and terminated her long term disability benefits. That termination decision was based, in part, on surveillance video showing Plaintiff's activities outside her home prior to going to a work evaluation, outside a shopping mall following the evaluation appointment, and upon Plaintiff's return home. Termination of Plaintiff's benefits became effective on November 30, 2000.

Plaintiff appealed the administrative decision, which was upheld upon administrative review, and subsequently filed a *pro se* ERISA action for judicial review of Defendant's decision to terminate her benefits (*Holler I* ). In October 2005, Judge Watson found that Defendant's decision to terminate Plaintiff's benefits was arbitrary and capricious and entered judgment in Plaintiff's favor. (*See Holler I*, Doc. 33). Because Plaintiff's claim was still within the first 36 months, the Court's decision in *Holler I* only addressed whether Plaintiff was entitled to long term disability benefits under the terms of the Plan as a result of being prevented from performing the essential duties of her own occupation. (*See Holler I*, Doc. 51 at 3–5).

1. This civil action has a long background and procedural history with the Court. This is the third of three ERISA cases filed by Plaintiff concerning the termination of her long term disability benefits under the Hartford Plan. This Court takes judicial notice of the District Court Opinions and Orders issued in *Kathy D. Holler v. Hartford Life & Accident Ins. Co.,* S.D. Ohio Case No. 1:04–cv–37 (*Holler I* ) and *Kathy D. Holler v. Hartford Life & Accident*

*Ins. Co.,* S.D. Ohio Case No. 1:06–cv–405 (*Holler II* ). Given that the Administrative Record in this case totals over 1,400 pages, the Court will cite to particular portions of the record as necessary for its analysis of the issues raised by the present motion. Insofar as the Court seeks to summarize the background and history of this case, the Court incorporates by reference *Holler I* (Docs. 31, 33) and *Holler II* (Docs. 24, 28).

Following the Court's decision in *Holler I*. Defendant calculated the award of benefits due to Plaintiff under the Plan and determined that, based on offsets for Social Security Disability payments Plaintiff received, and a lump sum payment she received from her retirement account. Defendant did not owe her any additional sums. In fact. Defendant determined that Plaintiff had been overpaid and sought reimbursement from her. This conflict spawned the litigation now referred to as *Holler II*, and resulted in a judgment from this Court that the administrative decision requiring an offset of Plaintiffs pension benefits was not arbitrary or capricious. (*Holler II*, Doc. 28).

Under the terms of the Plan, long term disability benefits were awarded to Plaintiff for an initial period of 36 months based on a finding that she was "totally disabled" under the terms of the plan "from performing the essential duties of [her own] occupation." (Doc. 21 at 7). In order to continue receiving benefits after the initial 36 month period. Plaintiff had to be "prevented from performing the essential duties of any occupation for which [she] is qualified by education, training, or experience." (Doc. 21 at 7). By letter dated June 2, 2006. Defendant informed Plaintiff that it had conducted a review of her claim and had determined that she did not meet the definition of disability beyond October 14, 2002 under the "any occupation" standard applicable to her continuing claim. (Doc. 2 at 196–202). Plaintiff appealed the decision to deny her benefits under the "any occupation" Plan provisions. The administrative decision denying benefits was upheld on appeal by letter to Plaintiff dated September 29, 2006.

Plaintiff initiated this ERISA action, pursuant to 29 U.S.C. § 1132(a), seeking judicial review of Defendant's decision to deny her benefits under the Plan's "any occupation" provision. Plaintiff points to

seven factors which the Court should consider and which support a finding that Defendant abused its discretion in evaluating her claim: (1) Defendant's initial 1999 decision to award Plaintiff benefits under the Plan was based on a finding that she was totally disabled from performing a sedentary occupation; (2) this Court concluded in *Holler I* that Defendant's decision to disregard its 1999 award was arbitrary and capricious; (3) at Defendant's urging. Plaintiff applied for and was awarded Social Security benefits based on a finding that she was disabled from performing any jobs under the Social Security Act as of April 14, 1999; (4) Defendant has demonstrated contempt for Plaintiff by reporting her to the Ohio Department of Insurance, Fraud Division; (5) there is no difference between Plaintiff's limitations with respect to her own occupation, which was sedentary, and her ability to perform any occupation; (6) there is no evidence of medical improvement to warrant a finding that Plaintiff's ability to perform work-related functions has increased since she was found disabled from her own occupation in *Holler I*; and (7) Defendant's dual role as both plan funder and claims administrator gives rise to a conflict of interest which must be factored into the Court's review of Plaintiff's claim.

Defendant argues that its decision was not arbitrary and capricious, but was based on independent reviews of the medical evidence provided by Plaintiff, and a review by a vocational counselor, which demonstrated that Plaintiff was able to perform a range of sedentary work and therefore was not disabled from "any occupation" under the terms of the Plan. Defendant maintains that the Court's decision in *Holler I* does not estop Defendant from reviewing the claim anew under the "any occupation" provisions of the contract. Defendant also claims that while it considered the fact that Plaintiff was awarded

social security benefits, it was not bound by such a finding to conclude that she was disabled under the "any occupation" terms of the policy. Defendant notes that Plaintiff's "any occupation" claim was reviewed by a claims personnel in a separate and distinct location from those who reviewed her "own occupation" claim in *Holler I* and that both the initial review and the review on appeal included file reviews by medical experts. Defendant contends that any conflict of interest inherent in its dual role as claims administrator and claims payor is thus mitigated by the independent opinions upon which its reviews relied in rendering their decisions, both on the initial review and the administrative appeal.

## II. STANDARD OF REVIEW

■ The Court reviews *de novo* a denial of benefits under an ERISA plan "unless the benefit plan gives the plan administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *University Hosp. v. Emerson Elec. Co.*, 202 F.3d 839, 845 (6th Cir.2000). If an administrator has such discretionary authority, the Court reviews the denial of benefits under the arbitrary and capricious standard. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *University Hosp.*, 202 F.3d at 845.

■ The arbitrary and capricious standard applies in the present case because the Plan gives Defendant "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Group Insurance Policy." (AR 18). "When a plan administrator has discretionary authority to determine benefits, [the Court] will review a decision to deny benefits under 'the highly deferential arbitrary and capricious standard of review.'" *Sanford v. Harvard Indus., Inc.*, 262 F.3d 590, 595 (6th Cir. 2001) (quoting *Yeager v. Reliance Stan-*

*dard Life Ins. Co.*, 88 F.3d 376, 380 (6th Cir.1996)).

Nonetheless, as noted by the Sixth Circuit, merely because the review is deferential does not mean that it is inconsequential. *Moon v. Unum Provident Corp.*, 405 F.3d 373, 379 (6th Cir.2005). The appellate court explained that while a benefits plan may vest discretion in the plan administrator, the federal courts do not sit in review of the administrator's decisions only for the purpose of rubber-stamping those decisions. "The arbitrary-and-capricious ... standard does not require us merely to rubber stamp the administrator's decision." *Jones v. Metro. Life Ins. Co.*, 385 F.3d 654, 661 (6th Cir.2004) (citing *McDonald v. Western–Southern Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir.2003)). Indeed, "[d]eferential review is not no review, and deference need not be abject." *McDonald*, 347 F.3d at 172. Our task is to "review the quantity and quality of the medical evidence and the opinions on both sides of the issues." *Id.*

■ If the administrative record, as it existed at the time of the administrator's final decision, supports a "reasoned explanation" for the termination of benefits, the decision is not arbitrary or capricious. *Id.* (citing *Williams v. Int'l Paper Co.*, 227 F.3d 706, 712 (6th Cir.2000)). *See also Wilkins v. Baptist Healthcare Sys.*, 150 F.3d 609, 615 (6th Cir.1998). Moreover, where, as here, Defendant acts as both the Plan Administrator and Plan Insurer, these dual roles create a conflict of interest which the Court must consider as a factor when evaluating whether Defendant abused its discretion by denying the benefits claim. *Metropolitan Life Insurance Co. v. Glenn*, 554 U.S. 105, 108, 128 S.Ct. 2343, 171 L.Ed.2d 299 (2008). Thus, when there is a conflict of interest, "the reviewing judge should take account of that circumstance as a factor in determining the ultimate adequacy of the record's support

for the agency's own factual conclusion." *Id.* at 119, 128 S.Ct. 2343. (citing *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 492–97, 71 S.Ct. 456, 95 L.Ed. 456 (1951)).

## III. ANALYSIS

Defendant makes four specific objections to the Magistrate Judge's Report and Recommendations. (Doc. 34). This Court will address each objection in turn.

### A. The "Arbitrary and Capricious" Standard

Defendant objects to the finding that its administrative decision was arbitrary and capricious because the Report and Recommendations allegedly failed to apply the arbitrary and capricious standard properly. Defendant claims that the Report and Recommendations essentially shift the burden of proof from Plaintiff to Defendant.

Contrary to Defendant's argument, this Court need not "defer completely to the decision of the plan administrator." *Combs v. Reliance Standard Life Ins. Co.,* No. 2:08cv102, 2009 WL 2902943, at *3, 2009 U.S. Dist. LEXIS 82602, at *7 (S.D.Ohio 2009). Several factors must be taken into account when reviewing whether a benefits decision is arbitrary: (i) the existence of a conflict of interest: (ii) the determination made by the Social Security Administration; and (iii) the quality and quantity of medical evidence. *Id.* (citing *DeLisle v. Sun Life Assurance Co. of Canada,* 558 F.3d 440, 444 (6th Cir.2009)).

In *Glenn,* 554 U.S. 105, 128 S.Ct. 2343, the Supreme Court found that the plan administrator's decision was arbitrary in an action similar to, but not nearly as compelling as the instant case. Signifi-

cantly, the reasons supporting the "arbitrary" finding were: (1) the existence of a conflict of interest; (2) the failure of the administrator to give any weight to the Social Security Administration's determination that the claimant was totally disabled; (3) the failure of the administrator to provide any explanation for rejecting the treating physician's opinion; and (4) the incomplete record provided to the administrator's medical consultant. *Id.* at 123–24, 128 S.Ct. 2343. All of these factors are also at play in the instant case. Moreover, in *Glenn,* the insured's treating physician had also concluded that the insured was not totally disabled, but in the instant case, all of Plaintiff's treating physicians opine that she is totally disabled.

Although Defendant argues that this Court's determination in *Holler I* cannot be dispositive now, the case they rely on for that proposition, *McDaniel v. Hartford,* No. 5–07–cv–7, 2008 WL 4426087, 2008 U.S. Dist. LEXIS 76402 (M.D.Ga. 2008), is inapposite. In *McDaniel,* a registered nurse with a back problem was unable to perform her "own occupation" because she could not push and pull patients into and out of hospital beds and lift and carry 25–50 pounds multiple times per day. After the own occupation benefit period of the Hartford policy at issue expired. Hartford argued that the nurse was not disabled from performing "any occupation," because she could perform "sedentary work." *Id.* at *2, 2008 U.S. Dist. LEXIS 76402 at *4. Unlike *McDaniel* this Court has already determined that it is arbitrary to conclude that Plaintiff could perform a sedentary job. Therefore, the decision in *Holler I* is quite significant and *McDaniel* is not persuasive.[2] *Calvert v.*

---

2. Under the Policy, Plaintiff is entitled to benefits for 36 months if she is unable to perform her sedentary occupation (the subject of *Holler I*). After 36 months. Plaintiff is entitled to benefits if she cannot perform the essential duties of any occupation for which she "is

qualified by education, training or experience that has an earnings potential greater than an amount equal to the product of ... her predisability earnings (*i.e.,* $38,000 per year) adjusted annually [from 1999] by adding ... the

*Firstar Fin., Inc.*, 409 F.3d 286, 295–97 (6th Cir.2005), is also instructive. The Sixth Circuit determined that a denial of benefits was arbitrary because the record showed that: (1) the plan administrator did not account for the Social Security Administration's total disability determination; (2) the determination was made on a file review without an independent medical evaluation; (3) a conflict of interest existed; and (4) the administrator ignored the objectively-verifiable evidence showing disability. The record reflects that the same facts are true in the instant case.

**B. Conflict of Interest**

■ Next, Defendant argues that the Report and Recommendations gives improper weight to the conflict of interest. The Court must take the conflict of interest into account when considering whether Defendant's decision to deny benefits was arbitrary and capricious. The weight to be given to Defendant's conflict of interest depends on the facts of the case. *Glenn,* 554 U.S. at 124–25, 128 S.Ct. 2343. The conflict can be of "great importance" if, as is the case here, there is evidence that the insurer has a history "of biased claims administration." *Id.* In this case, the conflict is entitled to greater weight because Defendant required Plaintiff to apply for social security disability benefits under the theory that she could not do any work and then ignored the SSA decision to award benefits, coupled with its unreasonable requirement of objective evidence to support Plaintiffs fibromyalgia diagnosis, and its heavy reliance on Dr. Bress's opinion. Moreover, the Court calls into question

Defendant's "seemingly inconsistent positions [which] were both financially advantageous." *Id.* at 118, 128 S.Ct. 2343.

Defendant has a clear history "of biased claims administration." Defendant exhibited "bias" in its arbitrary denial of Plaintiff's original claim. (*See Holler I* ). It also expressed bias in its internal emails which celebrated its denial of Plaintiff's claim. (Doc. 36, Ex. 1). Defendant even referred Plaintiff to the Ohio Department of Insurance. Fraud Division. *Id.* Accordingly, Defendant's conflict is, as a matter of law. of "great importance." Therefore, to the extent that the Report and Recommendations give significant weight to Defendant's conflict, such weight is proper under the facts. The Court finds that there is evidence of bad faith.

**C. The Social Security Finding of Disability**

When determining if a benefits decision is arbitrary, a court should give weight to the decision of the SSA. *DeLisle,* 558 F.3d at 445. Although not dispositive, a decision by the SSA is a significant factor to be considered, particularly when, as here, Defendant: (1) required Plaintiff to apply for Social Security; (2) benefitted financially from the receipt of Social Security; and (3) did not explain why it reached a different outcome than the SSA. *Combs,* 2009 WL 2902943, 2009 U.S. Dist. LEXIS 82602 (*citing DeLisle* at 446, *Bennett v. Kemper Nat'l Servs.,* 514 F.3d 547, 554 (6th Cir.2008)). These factors weigh in favor of the decision being adjudged as arbitrary and capricious. *Id.*

---

percentage change in the Consumer Price Index." (Policy at 5, 7). Even though the Policy technically contemplates two differing analyses, in Plaintiff's case, this is a distinction with no difference because Plaintiff's "own occupation" was a sedentary, clerical job. Thus, in the context of her claim analysis, there can be no material distinction between "own occupation" and "any occupation." The Court explained in *Holler I*: as the result of Ms. Holler's fibromyalgia, thoracic outlet syndrome, and low back pain, it is "arbitrary" to conclude that Ms. Holler is not "disabled" from performing a "sedentary" occupation. (Case No. 1:04–037, Docs. 31 and 33).

Defendant argues that Plaintiff's award of social security benefits is not determinative of whether she is disabled under the Hartford Plan. This Court agrees that nothing in the Plan requires Defendant to forego a review of Plaintiff's eligibility for benefits under the "any occupation" provisions of the Plan based solely on the fact that she was awarded social security disability benefits for her disability. Nevertheless, like the *Glenn* Court, this Court finds it highly questionable that Defendant required Plaintiff to apply for social security benefits based on the position that she could not work, then received the bulk of those benefits as a setoff to the plan benefits owed her under the "own occupation" policy provisions, and then ignored the agency's finding in concluding that she could in fact do sedentary work. 461 F.3d 660, 666–669 (6th Cir.2006), *aff'd and cited with approval*, 554 U.S. at 118, 128 S.Ct. 2343. *See also Darland v. Fortis Benefits Ins. Co.*, 317 F.3d 516 (6th Cir.2003).

**D. Objective Evidence of Fibromyalgia and Dr. Bress's Medical Opinion**

Finally, Defendant argues that: (1) it was proper to find that Plaintiff required objective evidence that she was disabled by fibromyalgia: and (2) Dr. Bress's opinion was rational and reasoned in light of the record.

The quality and quantity of the medical evidence reflecting fibromyalgia is sufficiently set forth. In sum, the record does not show that Defendant offered a "reasoned explanation" based on the required *substantial* evidence. *DeLisle*, 558 F.3d at 444. Substantial evidence means "much more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *McDonald*, 347 F.3d at 171.

"Fibromyalgia is a form of rheumatic disease with no known cause or cure. The principal symptoms, which are entirely subjective, are pain and tenderness in muscles, joints and ligaments, but the disease is frequently accompanied by fatigue, sleep disturbances, anxiety, dizziness, irritable bowels and tension headaches." *Walker v. Am. Home Shield Long Term Disability Plan*, 180 F.3d 1065, 1067 (9th Cir.1999) (citing Arthritis Foundation Pamphlet, Fibromyalgia 6–8 (1989)). (*Holler I*, Doc. 31 at 10).

A fibromyalgia diagnosis can be vexing because it cannot be confirmed by medical or laboratory testing and commonly turns on subjective reports of plain. *Green v. Prudential Ins. Co.*, 383 F.Supp.2d 980, 996 (M.D.Tenn.2005). In fact, the Sixth Circuit has recognized the difficulty of diagnosing fibromyalgia. "Unlike most diseases that can be confirmed or diagnosed by objective medical tests, fibrositis can only be diagnosed by elimination of other medical conditions which may manifest fibrositis-like symptoms of musculoskeletal pain, stiffness, and fatigue." *Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 817–819 (6th Cir.1988). "In stark contrast to the unremitting pain of which fibrositis patients complain, physical examinations will usually yield normal results—a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions. There are no objective tests which can conclusively confirm the disease." *Id.* Nevertheless, Defendant denied Plaintiff's claim because it concluded that there was a lack of objective medical evidence to support her doctors' diagnosis of fibromyalgia.

Prior to Defendant's June 2006 denial of Plaintiff's "any occupation" claim. Plaintiff's physicians continued to diagnose her with disabling fibromyalgia, pain, fatigue, thoracic outlet, and back pain. (ADM 69, 71). Plaintiff's symptoms included extreme pain, fatigue, weakness, numbness,

and tingling. *Id.* She had difficulty with standing or sitting for more than 20–30 minutes, lifting/carrying/pushing/pulling 20 pounds, driving or keyboarding for more than 10–20 minutes, and reaching/working overhead. *Id.* Her doctors continued to order that she remain "out of work." *Id.*

Nonetheless. Defendant rejected the opinions of Plaintiff's treating physicians and instead adopted the report of its consultants who only reviewed records. (*See ADM 262–269*). Notably, Defendant's doctor came to his contrary opinion in spite of his recognition (*ADM 269*) that Plaintiff's treating physician had directly communicated that "Ms. Holler is (in)capable of any types of employment activities as a result of her chronic fatigue and the physical examination findings of spasm, tenderness, and pain." (*See ADM 267–269*). The very next day, in contravention of Dr. Blatman's assessment and this Court's 2005 Opinion, Defendant's doctor concluded that Plaintiff could work a full time job. *Id.*

Defendant relied heavily in its appellate decision on Dr. Bress's opinion that "[t]here is no evidence to support fibromyalgia and no limitations from fibromyalgia." (ADM 38). Dr. Bress concludes that any limitations Plaintiff has on her ability to perform work functions "are primarily due, as stated, to the pulmonary and cardiac conditions." (*Id.*) However, the record does not provide a "reasoned explanation" for these conclusions, and, therefore, these conclusions are not sufficient to support the denial decision in this case. Dr. Bress was not a independent medical expert, rather he was a non-examining file reviewer who was hired by Defendant. Dr. Bress's opinion was based on a review and summary of the record which mischaracterizes the evidence related to Plaintiff's fibromyalgia and corresponding impairments. Consequently, the Court

views Dr. Bress's opinion with some skepticism. *Moon,* 405 F.3d at 381–82.

As noted in *Glenn,* Defendant's emphasis on its own doctor's record review and its de-emphasis of the opinions of Plaintiffs treating physicians is a "serious concern" that "taken together with some degree of conflicting interests'" can properly be the basis for setting aside an insurer's discretionary decision. Defendant cannot point to any medical evidence that is substantially different in kind or degree from the medical evidence and arguments presented to this Court in *Holler I.* From a medical perspective, nothing has changed from *Holler I* to this case.

The Administrative Record as a whole is replete with medical records which address Plaintiff's fibromyalgia. Indeed, that diagnosis is among the reasons why she began treating with Dr. Blatman in the first instance. (*See, e.g.,* ADM 355. 373–74, 480–81). Plaintiff's treating physicians have rendered opinions that she cannot sustain work activity for a full eight-hour day. Dr. Bress's review of the medical record, upon which Defendant relies to deny Plaintiff's benefits claim, selectively focuses on certain documents to the exclusion of others and mischaracterizes the record evidence to support his opinion. His opinion cannot be supported by a rational review of the record. Not only does he disregard the opinions of Drs. Blatman and Diller as to Plaintiff's functional limitations resulting from her fibromyalgia, he goes so far as to conclude that the records do not support such a diagnosis in the first instance, or any limitations deriving therefrom. These conclusions are neither reasonable nor rational in light of the Administrative Record.

## IV. CONCLUSION

As required by 28 U.S.C. § 636(b) and Fed.R.Civ.P. 72(b), the Court has reviewed

the comprehensive findings of the Magistrate Judge and considered *de novo* all of the filings in this matter, including the Administrative Record. Upon consideration of the foregoing, the Court does determine that such Report and Recommendations should be and is hereby adopted and that Defendant's objections are overruled.

Accordingly, in regard to the Report and Recommendations (Doc. 31), Plaintiff's motion for judgment on the pleadings (Doc. 26) is **GRANTED**. Plaintiff remains totally disabled and is therefore entitled to benefits under the Plan since December 2000, plus accrued interest. Furthermore, Defendant must continue to pay Plaintiff's benefits until June 2031, or until such time that her physician certifies that her position has materially improved.

**IT IS SO ORDERED.**

## REPORT AND RECOMMENDATION

TIMOTHY S. HOGAN, United States Magistrate Judge.

This matter is before the Court on plaintiff Kathy Holler's motion for judgment as a matter of law (Doc. 26), defendant Hartford Life and Accident Insurance Company's (Hartford's) memorandum in opposition to plaintiff's motion and for an order affirming the administrative decision (Doc. 27), and plaintiff's reply. (Doc. 29). Also before the Court is the Administrative Record filed by defendant Hartford comprised of Hartford's Long Term Disability Benefits Plan documents at AR 1–23 and the documents which constitute plaintiff

claims file at ADM 1–1441. Based on these documents and the Court's painstaking and thorough review of the hefty Administrative Record, and for the reasons set forth more fully below, this Court recommends that plaintiff's motion for judgment be granted on her ERISA claim for benefits.

## BACKGROUND

This case has a long and tortuous background and procedural history with which the District Court is well familiar, and which can be summarized as follows.[1] Plaintiff was employed by Flour Daniel Fernald from 1992 to 2001. In October 1999, plaintiff applied for long term disability benefits under a group insurance policy issued and administered by defendant Hartford. Plaintiff's claim was based on diagnoses of fibromyalgia, thoracic outlet syndrome, and low back pain and was initially approved for an award of benefits under Hartford's Long Term Disability Benefits Plan (the Hartford Plan) in December 1999. In December 2000, Hartford determined that plaintiff was no longer disabled under the terms of the Plan and terminated her LTD benefits. That termination decision was based, in part, on surveillance video showing plaintiff's activities outside her home prior to going to a work evaluation scheduled by Hartford, outside a shopping mall following the evaluation appointment, and upon plaintiff's return home. Hartford's termination of plaintiff's LTD benefits became effective as of November 30, 2000.

---

1. This is the third of three ERISA cases filed in this Court by plaintiff Holler concerning the termination of her LTD benefits under the Hartford Plan. This Court takes judicial notice of the District Court Opinions and Orders issued in *Kathy D. Holler v. Hartford Life and Accident Insurance Company*, S.D.Ohio Case No. 1:04–cv–37–MHW–TSB (*Holler I*) and *Kathy D. Holler v. Hartford Life and Accident Insurance Company*, S.D. Ohio Case No.

1:06–cv–405–MJB–TSB (*Holler II*). Given that the Administrative Record in this case totals over 1400 pages, the Court will cite to particular portions of the record as necessary for its analysis of the issues raised by the present motion. Insofar as the Court seeks to summarize the background and history of this case, the Court incorporates by reference *Holler I* Documents 31 and 33 and *Holler II* Documents 24 and 28.

Plaintiff appealed the administrative decision, which was upheld upon administrative review, and subsequently filed a *pro se* ERISA action for judicial review of Hartford's decision to terminate her benefits (*Holler I*). In October 2005, this Court, Judge Michael H. Watson presiding, found that defendant Hartford's decision to terminate plaintiff's LTD benefits was arbitrary and capricious and entered judgment in favor of Holler. (*See Holler I*, Doc. 33). Because Holler's LTD claim was still within the first thirty-six months, the Court's decision in *Holler I* only addressed whether plaintiff was entitled to LTD benefits under the terms of the Plan as a result of being prevented from performing the essential duties of her own occupation. (*See Holler I*, Doc. 51, pp. 3–5).

Following the Court's decision in *Holler I*, defendant Hartford calculated the award of benefits due to plaintiff under the Plan and determined that based on off-sets for Social Security Disability payments Holler received and a lump sum payment she received from her retirement account, Hartford did not owe plaintiff any additional sums. In fact, defendant determined that plaintiff had been overpaid and sought reimbursement from plaintiff. The ensuring conflict spawned the litigation now referred to as *Holler II*, and resulted in a judgment from this Court, Judge Michael R. Barrett presiding, that the administrative decision requiring an off-set of plaintiff's pension benefits was not arbitrary or capricious. (*Holler II*, Doc. 28).

Under the terms of the Plan, and as noted by the Court in *Holler I*, LTD benefits were awarded to plaintiff for an initial period of thirty-six months based on a finding that she was "totally disabled" under the terms of the plan "from performing the essential duties of [her own] occupation." (Doc. 21, Administrative Record, p. AR 7. *See also Holler I*, Doc. 33, pp. 6–7 and Doc. 51, pp. 3–4). Under the terms of the Plan, in order to continue receiving LTD benefits after the initial thirty-six month period, plaintiff "must be so prevented from performing the essential duties of any occupation for which [she] is qualified by education, training, or experience." (Doc. 21, AR 7). By letter dated June 2, 2006, Hartford informed plaintiff that it had conducted a review of her claim and determined that she did not meet the definition of disability beyond October 14, 2002, under the "any occupation" standard applicable to her continuing LTD claim. (Doc. 2, Administrative Record, p. ADM 196–202). Plaintiff appealed the decision to deny her benefits under the "any occupation" Plan provisions. The administrative decision denying benefits was upheld on appeal by letter to plaintiff dated September 29, 2006. (ADM 30–40). Plaintiff initiated this ERISA action, pursuant to 29 U.S.C. § 1132(a), seeking judicial review of Hartford's decision to deny her LTD benefits under the Plan's "any occupation" provision.

Plaintiff argues that she is entitled to judgment on the merits because defendant Hartford abused its discretion by denying her claim for LTD benefits under the "any occupation" standard. Plaintiff points to seven factors which the Court should consider and which support a finding that defendant abused its discretion in evaluating plaintiff's claim: (1) Hartford's initial 1999 decision to award plaintiff LTD benefits under the Plan was based on a finding that she was totally disabled from performing a sedentary occupation; (2) this Court concluded in *Holler I* that defendant's decision to disregard its 1999 award was arbitrary and capricious; (3) at defendant's urging, plaintiff applied for and was awarded Social Security benefits based on a finding that she was disabled from performing any jobs under the Social Security Act as of April 14, 1999; (4) defendant has demonstrated contempt for plaintiff by re-

porting her to the Ohio Department of Insurance, Fraud Division; (5) there is no difference between plaintiff's limitations with respect to her own occupation, which was sedentary, and her ability to perform any occupation; (6) there is no evidence of medical improvement to warrant a finding that plaintiff's ability to perform work-related functions has increased since she was found disabled from her own occupation in *Holler I*; and (7) defendant's dual role as both plan funder and claims administrator gives rise to a conflict of interest which must be factored into the Court's review of plaintiff's claim.

In response, defendant counters that it's decision was not arbitrary and capricious but was based on independent reviews of the medical evidence provided by plaintiff, and a review by a vocational counselor, which demonstrated that she was able to perform a range of sedentary work and therefore was not disabled from "any occupation" under the terms of the Plan. Defendant argues that the Court's decision in *Holler I* does not estop Hartford from reviewing the claim anew under the "any occupation" provisions of the contract. Defendant also argues that while it considered the fact that plaintiff was awarded social security benefits, it was not bound by such a finding to conclude that she was disabled under the "any occupation" terms of the policy. Defendant notes that plaintiff's "any occupation" claim was reviewed by a claims personnel in a separate and distinct location from those who reviewed her "own occupation" claim in *Holler I* and that both the initial review and the review on appeal included file reviews by medical experts. Defendant contends that any conflict of interest inherent in its dual role as claims administrator and claims payor is thus mitigated by the independent opinions upon which its reviewers relied in rendering their decisions, both on the initial review and the administrative appeal.

## STANDARD OF REVIEW

The Court reviews *de novo* a denial of benefits under an ERISA plan "unless the benefit plan gives the plan administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *University Hosps. v. Emerson Elec. Co.*, 202 F.3d 839, 845 (6th Cir. 2000). If an administrator has such discretionary authority, the Court reviews the denial of benefits under the arbitrary and capricious standard. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *University Hosps.*, 202 F.3d at 845.

The arbitrary and capricious standard applies in the present case because the Plan gives Hartford "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Group Insurance Policy." (AR 18). "When a plan administrator has discretionary authority to determine benefits, [the Court] will review a decision to deny benefits under 'the highly deferential arbitrary and capricious standard of review.'" *Sanford v. Harvard Indus., Inc.*, 262 F.3d 590, 595 (6th Cir.2001) (quoting *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 380 (6th Cir.1996)).

Nonetheless, as noted by the Sixth Circuit, merely because the review is deferential does not mean that it is inconsequential. *Moon v. Unum Provident Corp.*, 405 F.3d 373, 379 (6th Cir.2005). The Appellate Court explained as follows:

While a benefits plan may vest discretion in the plan administrator, the federal courts do not sit in review of the administrator's decisions only for the purpose of rubber-stamping those decisions. As we observed recently, "[t]he arbitrary-and-capricious ... standard does not require us merely to rubber stamp the administrator's decision." *Jones v. Metropolitan Life Ins. Co.*, 385

F.3d 654, 661 (6th Cir.2004) (citing *Mc-Donald v. Western–Southern Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir.2003)). Indeed, "[d]eferential review is not no review, and deference need not be abject." *McDonald*, 347 F.3d at 172. Our task at all events is to "review the quantity and quality of the medical evidence and the opinions on both sides of the issues." *Id.*

*Id.*

■ If the administrative record, as it existed at the time of the administrator's final decision, supports a "reasoned explanation" for the termination of benefits, the decision is not arbitrary or capricious. *Id.* (citing *Williams v. International Paper Co.*, 227 F.3d 706, 712 (6th Cir.2000)). *See also Wilkins v. Baptist Healthcare Sys.*, 150 F.3d 609, 615 (6th Cir.1998). Moreover, where, as here, the defendant acts as both the Plan Administrator and Plan Insurer, these dual roles create a conflict of interest which the Court must consider as a factor when evaluating whether defendant abused its discretion by denying the benefits claim. *Metropolitan Life Insurance Co. v. Glenn*, 554 U.S. 105, 128 S.Ct. 2343, 2350, 171 L.Ed.2d 299 (2008). Thus, when there is a conflict of interest, "the reviewing judge should take account of that circumstance as a factor in determining the ultimate adequacy of the record's support for the agency's own factual conclusion." *Glenn*, 128 S.Ct. at 2352 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 492–97, 71 S.Ct. 456, 95 L.Ed. 456 (1951)).

## OPINION

■ Having thoroughly reviewed the Administrative Record, as well as the initial decision to deny plaintiffs' "any occupation" claim and the denial decision rendered on appeal, this Court concludes that the record does not support a "reasoned explanation" for defendant's decision to deny benefits. The Court's conclusion is based on the following factors.

### Defendant's Denial Decision Ignored Plaintiff's Social Security Disability Award

Defendant Hartford argues at length in their responsive memorandum that plaintiff's award of social security benefits is not determinative of whether she is disabled under the Hartford Plan. The Court agrees that nothing in the Plan requires Hartford to forego a review of plaintiff's eligibility for benefits under the "any occupation" provisions of the Plan based solely on the fact that she was awarded social security disability benefits for her disability. Nevertheless, like the *Glenn* Court, this Court finds it highly questionable that Hartford required plaintiff to apply for social security benefits based on the position that she could do no work, then received the bulk of those benefits as a set-off to the plan benefits owed her under the "own occupation" policy provisions, and then ignored the agency's finding in concluding that she could in fact do sedentary work. 461 F.3d 660, 666–669 (6th Cir. 2006), *aff'd* and *cited with approval*, 128 S.Ct. at 2352. *See also Darland v. Fortis Benefits Ins. Co.*, 317 F.3d 516 (6th Cir. 2003).

While defendant argues that it "acknowledged" the social security award, it contends that plaintiff failed to include "the detailed decision customarily issued that would explain the evidence that formed the basis for the SSA conclusion." (Doc. 27, pp. 20–21). However, nowhere in either the initial denial letter dated June 2, 2006, (ADM 196–202) or the September 29, 2006 letter affirming denial of plaintiff's "any occupation" claim on appeal, (ADM 30–40), do the claims reviewers even mention plaintiff's social security award as a document which they reviewed or consid-

ered. Nor did these reviewers state that they ignored the conclusions of the Social Security Administration based on a lack of documentation. Furthermore, none of the medical reviewers hired by Hartford to review the medical files cited to or listed the social security award as a document that was included for review with the records they considered. By contrast, where defendant's reviewers, such as Drs. Bress, Clark and Popovich, determined that they needed additional information, they asked for it. (*See e.g.* ADM 62, 66 noting that the doctors reviewing plaintiff's medical files made phone calls to the treating physicians for additional information).

At best, this represents a post-hoc rationalization for why defendant did not consider plaintiff's social security award. The Sixth Circuit looks with disfavor upon such post-hoc rationalizations, as this District Court noted in *Holler I*:

> It strikes us as problematic to, on one hand, recognize an administrator's discretion to interpret a plan by applying a deferential "arbitrary and capricious" standard of review, yet, on the other hand, allow the administrator to "shore up" a decision after-the-fact by testifying as to the true basis for the decision after the matter is in litigation, possible deficiencies in the decision are identified, and an attorney is consulted to defend the decision by developing creative post hoc arguments that can survive deferential review.

*University Hosps.*, 202 F.3d at 849 n. 7. While plaintiff's social security award was in her file as evidenced by the fact that it was a part of the administrative record in this case, (*see* ADM 595–610), no one considered the SSA disability award in determining whether she could perform "any occupation" under the Plan, or set forth any reasons whatsoever why the award does not support her claim for LTD benefits under the Plan. *Cf. Green v. Pruden-*

*tial Ins. Co. of America*, 383 F.Supp.2d 980, 999 (M.D.Tenn.2005) (defendant's decision to deny benefits did not improperly ignore social security decision where defendant acknowledged decision in its denial letter and explained differences between the standards for an award under SSA regulations and the criteria applicable under the plan at issue thereby demonstrating reasonable review of the SSA decision). Accordingly, this factor supports the conclusion that defendant's denial decision was not rational in light of the quality and quantity of evidence on the record.

**Defendant's Decision to Deny Benefits Based on a Lack of Objective Evidence to Support Plaintiff's Fibromyalgia Diagnosis Is Not Rational**

As the Magistrate Judge noted in Holler I,

"Fibromyalgia" has been described as follows:

> Fibromyalgia is a form of rheumatic disease with no known cause or cure. The principal symptoms, which are entirely subjective, are pain and tenderness in muscles, joints and ligaments, but the disease is frequently accompanied by fatigue, sleep disturbances, anxiety, dizziness, irritable bowels and tension headaches.

*Walker v. American Home Shield Long Term Disability Plan*, 180 F.3d 1065, 1067 (9th Cir.1999) (citing Arthritis Foundation Pamphlet, Fibromyalgia 6–8 (1989)).

(*Holler I*, Doc. 31, p. 10).

The diagnosis of fibromyalgia can be vexing as it cannot be confirmed by medical or laboratory testing and commonly turns on subjective reports of pain. *Green*, 383 F.Supp.2d at 996.

The Sixth Circuit has recognized the difficulty of diagnosing fibromyalgia:

Unlike most diseases that can be confirmed or diagnosed by objective medical tests, fibrositis can only be diagnosed by elimination of other medical conditions which may manifest fibrositis-like symptoms of musculoskeletal pain, stiffness, and fatigue.

*Preston v. Secretary of Health & Human Servs.*, 854 F.2d 815, 817–819 (6th Cir. 1988). Moreover, the Sixth Circuit Court of Appeals has recognized the difficulties of assessing whether a claimant allegedly suffering fibromyalgia, or fibrositis, is disabled:

> Fibrositis causes severe musculoskeletal pain which is accompanied by stiffness and fatigue due to sleep disturbances. In stark contrast to the unremitting pain of which fibrositis patients complain, physical examinations will usually yield normal results—a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions. There are no objective tests which can conclusively confirm the disease[.]

*Id.* Despite these difficulties, the Sixth Circuit has held that fibromyalgia can be disabling. *Green*, 383 F.Supp.2d at 993 (citing *Preston*, 854 F.2d at 818). Nevertheless, defendant initially denied plaintiff's claim in because it concluded that there was a lack of objective medical evidence to support her doctors' diagnosis of fibromyalgia.

In its June 2, 2006 letter denying plaintiff's "any occupation" claim, defendant sets forth the applicable plan provisions, a recitation of the specific documents relied upon, and a summary of the medical records considered, as well as a brief discussion of the report by Dr. Popovich who was hired by defendant Hartford to review plaintiff's medical records. (*See* ADM 196–202). Defendant states that "Dr. Popovich ... found that the records provided complaints of your pain but do not contain objective medical evidence to support your impairment ... and the impairments are not supported by the results of objective studies. Also, when seen at Christ Hospital, your neurological examination showed normal strength and gait." (ADM 200). The decision further states:

> Due to the above, *along with a lack of objective medical evidence* we have concluded that you are able to sit, stand and walk and can perform full time work at a sedentary or light duty level.

(*Id.*) (emphasis added). As this District Court has already recognized in *Holler I*,

> In this case, where treating physicians and specialists have diagnosed fibromyalgia, and the medical research indicates that there are a lack of objective tests to prove this condition, it is unreasonable to require objective findings.

(*Holler I*, Doc. 33, pp. 5–6) (citing *Green*, 383 F.Supp.2d at 997). The same reasoning applies to the denial decision in the present case. (*See also Pralutsky v. Met. Life Ins. Co.*, 316 F.Supp.2d 840, 850 (D.Minn.2004)) (where plan documents do not require submission of objective evidence, and in context of claim based on fibromyalgia, it was arbitrary and capricious for Plan Administrator to require such objective evidence).

As noted above, the *Preston* Court has recognized that "physical examinations will usually yield normal results—a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions." 854 F.2d at 818. Thus, Dr. Popovich's conclusion that the record lacked evidence to support plaintiff's claim based, in part, on reference to a normal neurological examination, is unreasonable. Moreover, Dr. Popovich's conclusion that there is no objective medical evidence to support the diagnosis of fibromyalgia is belied by the record. Dr. Blatman issued a letter on August 28, 2003, setting forth

the findings from his clinical examination of plaintiff, as well as the results of "pressure plethysmography testing" which he used to assess trigger points. (ADM 480–81). Rather than discussing the relative merits of this testing method or his interpretation of the results, Dr. Popovich apparently ignores it altogether in concluding that there is no objective evidence on the record. Indeed, Dr. Popovich's review of the August 28, 2003 letter is confined to his summary of Dr. Blatman's opinion "that Mrs. Holler was totally disabled from any occupation." (ADM 264).

## Dr. Bress's Opinion Was Not Reasoned or Rational in Light of the Record

Plaintiff appealed the administrative decision to deny her claim for LTD benefits under the "any occupation" provisions of the Hartford Plan. This appeal triggered a second claims review by defendant's Appeals Unit which included reviews of the medical file by two physicians, Drs. James Bress and John Clarke. Dr. Clarke's review was limited to consideration of the medical records as they relate to plaintiff's cardiac condition. (ADM 39). Defendant's decision on appeal sets forth the additional documentation relied upon, its summary of the medical evidence reviewed on appeal, and defendant's conclusion that plaintiff had the functional capacity to perform at least sedentary work and therefore was not disabled from "any occupation" under the terms of the Plan. (ADM 30–40). Defendant Hartford relied heavily in its appellate decision on Dr. Bress's opinion that "[t]here is no evidence to support fibromyalgia and no limitations from fibromyalgia." (ADM 38). Rather, Dr. Bress concludes that any limitations plaintiff has on her ability to perform work functions "are primarily due, as stated, to the pulmonary and cardiac condition." (*Id.*). As will be dismissed more fully below, the record does not provide a "reasoned explanation" for these conclusions, and thus these conclusions are not suffi-

cient to support the denial decision in this case.

■ In determining whether defendant's decision was arbitrary and capricious, this Court is tasked with "review[ing] the quantity and quality of the medical evidence and the opinions on both sides of the issues." *McDonald,* 347 F.3d at 172. While courts cannot require administrators to accord special weight to the opinions of a claimant's treating physician, nevertheless, plan administrators "may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." (*Holler I*, p. 6) (quoting *Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 834, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003)). In this case, the administrator disregarded the opinions of plaintiff's treating physicians, Drs. Blatman and Diller, who both concluded that plaintiff's limitations precluded her from performing work activities for a full 8–hour work day. Instead, defendant relied upon the opinions of Drs. Bress and Clarke to conclude that plaintiff was not so limited. The Court notes that in this case, neither Dr. Bress nor Dr. Clarke were independent medical experts who examined plaintiff. Rather they were both non-examining file reviewers who were hired by defendant Hartford. Dr. Bress's opinion, as discussed below, was based on a review and summary of the record which mischaracterizes and gives a mis-impression of the evidence related to plaintiff's fibromyalgia and corresponding impairments. Consequently, the Court views Bress's opinion, and defendant's explanation for its decision based on that opinion, with some skepticism. *Moon,* 405 F.3d at 381–82.

Dr. Clarke's opinion is based on a review of the medical record with regard to plaintiff's cardiac condition and the limitations related thereto. Plaintiff concedes that

the limitations from her cardiac condition as described by her treating cardiologist, Dr. Hutchins, do not preclude her from all work activity. However, as plaintiff notes, her disability claim was not based on her cardiac condition. Rather, her claim under the Plan was based on fibromyalgia, thoracic outlet syndrome, and low back pain. Moreover, Dr. Hutchins makes clear in a letter dated June 28, 28, 2006, that the Physical Capacity Evaluation (PCE) form he completed on February 27, 2006, was completed based solely on his evaluation of plaintiff as her cardiologist: "[a]ll of the issues addressed in the form pertain specifically to her heart disease and are unrelated to any other ailment or disability she may have." (ADM 84).

Dr. Blatman completed a PCE Form on March 6, 2006, indicating that plaintiff was limited to sitting for 15 minutes at a time for a total of 2 hours per day, standing for 15–30 minutes at a time for a total of 2 hours per day, and walking for 15–30 minutes at a time for a total of 2 hours per day. (ADM 340–41). He also restricts her to lifting no more than 20 pounds occasionally and only occasional driving, climbing, stooping, kneeling, crouching, and crawling. (*Id.*) He notes that if she undertakes an activity on particular day because it has to be undertaken, she experiences increased pain on the following days. (ADM 341). Dr. Diller completed a PCE Form dated June 30, 2006, which similarly limits plaintiff to 2 hours each of sitting, standing, and walking for a total of six hours combined per day. (ADM 181). Neither of these physicians who have treated plaintiff for fibromyalgia, among other conditions, has opined that plaintiff can walk, sit, or stand for a combined total of eight hours per day. Notwithstanding their opinions, Dr. Bress concludes that plaintiff can sit for six hours of an eight hour work day with occasional walking or standing and is thus capable of full-time sedentary work. (ADM 63). Dr. Bress cannot rationally base this conclusion on the PCE by Dr. Hutchins which was limited to consideration of plaintiff's cardiac condition, and which Dr. Hutchins clearly indicated did not include any consideration of other conditions or illnesses from which plaintiff suffers.

Defendant may be justified in determining that plaintiff is not disabled from all work based on her cardiac condition alone. However, defendant cannot rely on Dr. Hutchins's PCE to conclude that the opinions of Drs. Blatman and Diller, who did consider plaintiff's limitations from fibromyalgia, are contradicted by other evidence and therefore should be disregarded. Nevertheless, this is exactly what Dr. Bress appears to have done. (*See* ADM 37–38; 63–64). Dr. Bress supports his opinion with reference to the February 26, 2006 PCE completed by Dr. Hutchins, the results of a stress test plaintiff underwent in December 2004, the October 2000 video surveillance report, and his determination that multiple notes do not mention trigger points or fibromyalgia, and his determination that plaintiff "do[es] not meet the ACR[2] criteria for fibromyalgia." In so doing, Dr. Bress concludes not only that plaintiff can perform a range of sedentary to light work for a full 8 hours per day, but as noted above, he also concludes that "[t]here is no evidence to support fibromyalgia and no limitations from fibromyalgia." (ADM 38). These conclusions are based on Dr. Bress's mischaracterization and misstatement of the record.

Dr. Bress's conclusion that there is no evidence to support fibromyalgia or limita-

---

**2.** While the letter does not specify, the Court interprets "ACR" to stand for "American College of Rheumatology."

tions therefrom is supported in part by a written report summarizing the October 2000 video surveillance tape which defendant relied upon in part to support its denial decision in *Holler I*. As the Court noted in *Holler I*, while the video surveillance may support that conclusion that plaintiff can perform a range of activities, it "does not establish that plaintiff can perform such activities for the duration of an eight-hour work day, five days a week." (*Holler I*, Doc. 31, p. 11). Moreover, "reliance on the video surveillance report is undermined by the fact that the investigator waited outside plaintiff's residence for three days, yet observed plaintiff outside her home on only one day." (*Id.*). In addition, Dr. Bress did not actually observe plaintiff lifting or handling objects on the video; rather, he reviewed a written report which listed or summarized the activities she was alleged to have undertaken on the video. (ADM 58). He states that plaintiff has acknowledged that on "good days" she can perform all of the activities listed in the video summary. (ADM 63). The issue presented is not whether plaintiff can perform some or all of this laundry list of activities part of the time, but whether she can perform sustained work-related activity forty hours per week. As noted by the Court in *Holler I*, the video does not support such a finding. Nevertheless, Dr. Bress uses this evidence to conclude that plaintiff can perform these activities on a sustained basis and therefore is able to engage in the work activities associated with a range of sedentary to light work. (ADM 63).

Similarly, Dr. Bress puts great emphasis on the results of plaintiff's December 2004 stress test which was administered as part of her evaluation for coronary artery disease by Dr. Hutchins. Dr. Bress concludes that the results are inconsistent with the findings of her treating physicians that she has shortness of breath on exertion. Assuming that to be the case, the stress test standing alone does not constitute evidence that plaintiff can perform sustained work activity for eight hours a day, five days a week.

Finally, and perhaps most tellingly, Dr. Bress's report selectively refers to certain portions of the record or mis-states or mis-characterizes the record to paint a picture from which to conclude there is a dearth of evidence to support the diagnosis of fibromyalgia by plaintiff's treating physicians. Dr. Bress states that "multiple notes do not mention trigger points" and specifically references notes by Drs. Henthorn, Hutchins, Schrock and Diller in support of this conclusion. Dr. Bress's statement that Dr. Henthorn's July 14, 2005 note "makes no mention of fibromyalgia" is directly contradicted by the "Impression" section of note itself. (ADM 104, 113–14). In addition, it bears noting that plaintiff was referred to Dr. Henthorn for a headup tilt examination due to recurring problems with lightheadedness and dizziness, not for treatment or assessment of her fibromyalgia or any other condition. (*Id.*).

Dr. Bress likewise refers to a November 11, 2005 note by Dr. Hutchins, plaintiff's cardiologist, which includes a complaint of leg pain at night but does not discuss any complaints of fibromyalgia. Review of this record reveal that the note is also accompanied by a letter from Dr. Hutchins to Dr. Diller on that same date which indicates that the purpose of the office visit was to follow-up with plaintiff for coronary artery disease and persistent chest pain. (ADM 93–94). The letter also indicates that the Dr. Hutchins's note regarding plaintiff's leg pain was made in the *course of ruling out claudication*. (ADM 93). Thus, it is not rational to conclude that a lack of reference to fibromyalgia in this note indicates that plaintiff is not suffering from that disease.

Dr. Bress refers to two notes from Dr. Diller dated March 31, 2005 and April 28, 2005, which he also states do not mention tender points or plaintiff's fibromyalgia. The April 28, 2005 note is from a follow-up appointment for numbness and tingling of the right arm and leg as well as chest pain. (ADM 432). Its reference to "no point tender" appears in a section addressing low back pain. (*Id.*). While Dr. Bress would single this note out to demonstrate a lack of references to tender points or fibromyalgia, there are multiple notes in the file from Dr. Diller which do refer to plaintiff's fibromyalgia and or tender points. (*See e.g.* ADM 121, 181, 147, 426, 440, 442, 443, 450). The March 31, 2005 note was from a follow-up visit following an emergency admission to Christ Hospital on February 23, 2005, and a low blood pressure reading taken at a prior follow-up office visit on March 4, 2005. (ADM 434–35).

Finally, Dr. Bress points to a note from Dr. Schrock dated February 23, 2005, which did not include a discussion of fibromyalgia or tender points, in support of Dr. Bress's opinion that there is no evidence to support plaintiff's fibromyalgia diagnosis or related limitations. As mentioned above, plaintiff was admitted to Christ Hospital on an emergency basis on February 23, 2005. Review of the note from Dr. Schrock reveals that plaintiff presented in the doctor's office that day complaining of shortness of breath and lightheadedness and that she was on breathing medication without improvement. Based on Dr. Schrock's review of her vitals and an EKG test that day, he recommended that she be admitted to the emergency department "to evaluate for MI vs. *Heart failure v. pneumonia.*" (ADM 436–37). It defies common sense to conclude that the lack of reference to fibromyalgia when plaintiff was being rushed to the ER somehow supports the conclusion that she does not also suffer from that illness.

The Administrative Record as a whole is replete with medical records which address plaintiff's fibromyalgia. Indeed, that diagnosis is among the reasons why she began treating with Dr. Blatman in the first instance. (*See e.g.* ADM 355, 373–74, 480–81). Her treating physicians who deal with her fibromyalgia, among other conditions, have rendered opinions that she cannot sustain work activity for a full eight hour day. These opinions are not contradicted in the record by any other physician who has examined and or treated her for fibromyalgia. Dr. Bress's review of the medical record upon which defendant relies to deny plaintiff's benefits claim selectively focuses on certain documents to the exclusion of others and mischaracterizes the record evidence to support his opinion. His opinion cannot be supported by a rational review of the record. Not only does he disregard the opinions of Drs. Blatman and Diller as to plaintiff's functional limitations resulting form her fibromyalgia, he goes so far as to conclude that the records do not support such a diagnosis in the first instance, or any limitations deriving therefrom. These conclusions are neither reasonable nor rational in light of the Administrative Record.

## Defendant's Conflict of Interest Is Entitled to Significant Weight

As noted above, a conflict of interest exists where the claims administrator of an ERISA benefit plan serves dual roles as both Plan Administrator and Plan Insurer. It is undisputed that defendant Hartford filled these dual roles in the present case. The Court must take this factor into account when considering whether defendant's decision to deny benefits was arbitrary and capricious. The Court agrees with defendant that the mere existence of such a conflict is not sufficient in and of itself to find an abuse of discretion on the

part of the Hartford Plan. *See Glenn,* 461 F.3d at 666, 674. However, in this case, and given the other factors discussed above, the conflict is entitled to greater weight. The fact that defendant required plaintiff to apply for social security disability benefits under the theory that she could not do any work and then ignored the SSA decision to award benefits, coupled with its unreasonable requirement of objective evidence to support plaintiff's fibromyalgia diagnosis, and its heavy reliance on Dr. Bress's opinion which supported by the record, the Court calls to question Hartford's "seemingly inconsistent positions [which] were both financially advantageous." *Glenn,* 128 S.Ct. at 2352.

Upon review of the record as a whole, Dr. Bress's conclusions and defendant's reliance thereon are neither reasonable nor rational and cannot support Hartford's decision to deny benefits under the Plan. Plaintiff was awarded LTD benefits under the Plan's "any occupation" provisions based on the limitations imposed by fibromyalgia, COPD and low back pain. Defendant then reversed course. This Court reversed defendant's denial decision in *Holler I based* on defendant's unreasonable rejection of plaintiff's treating physician's opinion concerning the limitations imposed by her diagnosed fibromyalgia. In this case, as discussed above, defendant's initial denial of plaintiff's claim was based on the untenable position that there was no objective evidence to support impairment based on fibromyalgia. Defendant has improperly ignored the Social Security Administration's finding that plaintiff is disabled from her impairments, and seeks to rest its denial decision on a selective reading and mischaracterization of the record. This it cannot do.

1. Plaintiff's failure to submit a memorandum in opposition to Defendant's motion may be *deemed sufficient grounds for the Court to* grant the motion. S.D. Ohio Civ. R. 7.2(a)(2).

For all these reasons **IT IS HEREBY RECOMMENDED THAT:** Plaintiff's motion for judgment on the pleadings be **GRANTED** and judgment be entered in her favor on her ERISA claim.

**ORDER: (1) DENYING DEFENDANT'S MOTION TO ALTER JUDGMENT (Doc. 45); AND (2) GRANTING PLAINTIFF'S MOTION FOR REASONABLE ATTORNEYS' FEES AND COSTS (Doc. 35)**

This civil action is currently before the Court on Defendant's motion to alter judgment. (Doc. 45). Plaintiff did not file a memorandum in opposition.[1]

Also before the Court is Plaintiff's motion for reasonable attorneys' fees and costs (Doc. 35), supplemental memorandum in support (Doc. 43), and Defendant's memorandum in opposition (Doc. 48).

## I. MOTION TO ALTER JUDGMENT

### A. Standard of Review

Federal Rule of Civil Procedure 59(e) permits a party to file a motion to alter or amend a judgment. The Sixth Circuit has determined, however, that a motion to alter or amend judgment may be granted only: "(1) to correct a clear error of law; (2) to account for newly discovered evidence or an intervening change in the controlling law; or (3) to otherwise prevent manifest injustice." *CGH Transp. Inc. v. Quebecor World, Inc.,* 261 Fed. Appx. 817, 823 (6th Cir.2008) (citing *GenCorp, Inc. v. Am. Int'l Underwriters,* 178 F.3d 804, 834 (6th Cir.1999)). Any "newly discovered evidence" the moving party provides must have been previously unavailable. *Id.* (citing *GenCorp,* 178 F.3d at

However, in the interests of justice, the Court will address the substantive issues raised in *the motion.*

834). "Further, under Rule 59(e), parties cannot use a motion for reconsideration to raise new legal arguments that could have been raised before a judgment was issued." *Roger Miller Music, Inc. v. Sony/ATV Publ'g,* 477 F.3d 383, 395 (6th Cir. 2007) (citation omitted).

In addition to the substantive requirements of a successful Rule 59(e) motion, the Rule also states that "a motion to alter or amend a judgment must be filed no later than 10 days after the entry of the judgment." Fed.R.Civ.P. 59(e). The ten-day filing period is jurisdictional in nature, and any motion to reconsider filed outside this time frame is of no effect. *Feathers v. Chevron, U.S.A., Inc.,* 141 F.3d 264, 268 (6th Cir.1998). Defendant's motion to alter needed to be filed by September 8, 2010 in order to meet this deadline. (*See* Docs. 40, 41). However, Defendant filed its motion on September 24, 2010. (Doc. 45).

A motion to reconsider filed more than ten days after the entry of judgment is treated as a motion for relief from judgment under Fed.R.Civ.P. 60(b). The standard for granting a Rule 60 motion is significantly higher than the standard applicable to a Rule 59 motion. Rule 60(b) provides that relief may be granted only for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud, misrepresentation, or other misconduct of an adverse party;

(4) the judgment is void;

(5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or

(6) any other reason justifying relief from the operation of the judgment.

Fed.R.Civ.P. 60(b).

### B. Analysis

Defendant moves the Court to alter or amend its decision and judgment to remove all references to: (1) an award of future benefits; (2) complete deference afforded to the opinions of Plaintiff's physician in determining her entitlement to future benefits; and (3) the finding that Defendant has a "history of biased claims administration."

#### 1. Future benefits

Under ERISA, a civil action may be "brought by a participant or beneficiary ... to recover benefits due him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Defendant claims that the Court's decision exceeded these statutorily provided remedies by going beyond reinstating benefits and awarding past due benefits, to awarding future benefits.

The Court hereby clarifies its ruling. The Court concluded that Plaintiff remains totally disabled and entitled to benefits under the Plan. The Court has not determined Plaintiff's entitlement to future benefits. However, as long as her condition does not improve, she is entitled to the disability until her 67th birthday in 2031. Nothing prevents Plaintiff's health insurance plan from evaluating whether she continues to be disabled in the future.

#### 2. Deference to Plaintiff's physician

Next, Defendant argues that the Court improperly ordered it to defer to Plaintiff's physician's opinion when evaluating her

right to continued benefit payments under the plan. Such deference is also known as the "treating physician rule," and Defendant claims that it does not apply in the ERISA context. The Court acknowledges that plan administrators need not accord special deference to the opinions of claimants' treating physicians; however "plan administrators may not arbitrarily refuse to credit a claimant's reliable evidence including the opinions of a treating physician." *Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 834, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003). The Court is not suggesting that Defendant may not seek and obtain other medical input concerning Plaintiff's medical status. In its opinion, the Court simply emphasized that as a result of Defendant's past arbitrary and capricious decisions relating to Plaintiff, specifically Defendant's rejection of Plaintiff's treating physician in favor of consultants who reviewed only a summary of the record, Defendant must credit reliable opinions of Plaintiff's treating physicians as required by law.

### 3. History of Biased Claims Administration

Finally, Defendant takes issue with the following statement in the Court's decision: Defendant has a clear history "of biased claims administration." Defendant exhibited "bias" in its arbitrary denial of Plaintiff's original claim. It also expressed bias in its internal emails which celebrated its denial of Plaintiff's claim. Defendant even referred Plaintiff to the Ohio Department of Insurance, Fraud Division. Accordingly, Defendant's conflict is, as a matter of law, of "great importance." Therefore, to the extent that the Report and Recommendations give significant weight to Defendant's

conflict, such weight is proper under the facts. (Doc. 40 at 10–11). Defendant argues that the evidence in this case was strictly limited to Plaintiff's claim and that all of the Court's findings regarding Defendant's "bias" were case-specific. The Court does not disagree with Defendant's contentions, nor do they change the Court's analysis. The Court maintains that there is a clear history of biased claims administration in the instant case.[2] It is clear from the language of the opinion that the Court was not referring to Defendant's claims administration processes in general—a conclusion that this Court would have no basis to make. Therefore, the Court declines Defendant's request that the Court amend its order to remove the reference to a "history of biased claims administration."

Accordingly, and given the instant clarification of the Court's original decision and judgment, Defendant's motion to alter judgment (Doc. 45) is **DENIED.**

## II. MOTION FOR ATTORNEYS' FEES

Plaintiff moved for attorneys' fees and costs (including prejudgment interest) pursuant to Section 502(g)(2) of the Employee Retirement Income Security Act of 1074 ("ERISA"), 29 U.S.C. § 1132(g)(2). In support of its motion, Plaintiff submitted the declaration of attorney Michael Roberts and an itemized listing of the attorneys' fees and costs. (Doc. 35, Exs.1, 2).

### A. Standard of Review

In most lawsuits seeking relief under ERISA, "a reasonable attorney's fee and costs are available to either party at the court's discretion." *Hardt v. Reliance Standard Life Ins.,* —— U.S. ——, 130

---

**2.** As this Court noted in its decision, the instant case is the third of three ERISA cases

filed in this Court by Plaintiff concerning the termination of her LTD benefits.

S.Ct. 2149, 2152, 176 L.Ed.2d 998 (2010) (quoting 29 U.S.C. § 1132(g)(1)) (citation omitted). Although the language of the statute is silent regarding the degree of success a party must achieve in order to be eligible for an award of attorneys' fees, in *Hardt*, the Supreme Court interpreted the language of § 1132(g)(1) to allow an award of attorneys' fees " 'in its discretion' ... 'to either party' ... as long as the fee claimant has achieved 'some degree of success on the merits.' " *Id.* (quoting *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 694, 103 S.Ct. 3274, 77 L.Ed.2d 938 (1983); 29 U.S.C. § 1132(g)(1)).

The Fourth Circuit's five-factor test considered in *Hardt* is identical to the *King* test utilized in this Circuit. *Compare Hardt*, 130 S.Ct. at 2155 n. 1 (quoting *Quesinberry v. Life Ins. Co. of North Am.*, 987 F.2d 1017, 1029 (4th Cir.1993) (setting out the Fourth Circuit test)) and *Gaeth v. Hartford Life Ins. Co.*, 538 F.3d at 529 (6th Cir.2008) (setting out the Sixth Circuit test). The Supreme Court did not, however, "foreclose the possibility that once a claimant has satisfied this requirement [some success on the merits], and thus becomes eligible for a fees award under § 1132(g)(1), a court may consider the five factors adopted by the Court of Appeals ... in deciding whether to award attorney's fees." *Hardt*, 130 S.Ct. at 2158 n. 8. *Hardt*, therefore, adds a threshold determination to a court's analysis of a motion for fees under § 1132(g)(1). Once a court determines that a claimant has achieved "some degree of success on the merits," it may apply a factor test to determine whether to award fees.

## B. Analysis

 Plaintiff's eligibility for attorneys' fees and costs under § 1132(g)(1) turns on the question of whether she has achieved "some degree of success on the merits." *Hardt*, 130 S.Ct. at 2158. The Court easily concludes that Plaintiff has achieved "some degree of success on the merits."

Plaintiff's eligibility for attorneys' fees, however, does not establish her entitlement to them. *Hardt*, 130 S.Ct. at 2158 n. 8 (" [O]nce a claimant ... becomes eligible for a fees award ... a court may consider the five factors ... in deciding whether to award attorney's fees."). The factors of the *King* test must weigh in favor of an award of attorneys' fees before a district court in this Circuit will exercise its discretion to grant such fees. *Kauffman v. Sedalia Med. Center, Inc.*, No. 2:04cv543, 2007 WL 490896 at *1, 2007 U.S. Dist. LEXIS 9572 at *1 (Feb. 9, 2007 S.D. Ohio).

The *King* factors are as follows: (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorneys' fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions. *Gaeth*, 538 F.3d at 529. Because no single factor is determinative, the Court will consider each factor in turn. *Moon v. Unum Provident Corp.*, 461 F.3d 639, 642–43 (6th Cir.2006).

### 1. Culpability or bad faith

This Court's finding that Defendant's denial of benefits was arbitrary and capricious does not mean that the denial was made in bad faith. *Foltice v. Guardsman Products, Inc.*, 98 F.3d 933, 937 (6th Cir. 1996). Rather, "the Court considers the circumstances surrounding the denial," in order to determine the level of Defendant's culpability or bad faith. *Kauffman*, 2007 WL 490896, at *1, 2007 U.S. Dist. LEXIS 9572, at *1. It is important to note that

culpability and bad faith are not synonymous-as is demonstrated by the disjunctive "or" in the *King* test. *Pelchant v. Unum Life Ins. Co.*, No. 3:02CV7282, 2003 U.S. Dist. LEXIS 10709, at *2 (N.D. Ohio June 25, 2006). "Culpability is merely defined as 'blameworthiness.'" *Id.* at *2 n. 1 (citing Black's Law Dictionary 385 (7th ed.1999)). Bad faith, on the other hand, has been defined by the Sixth Circuit as "arbitrary, reckless, indifferent, or intentional disregard of the interests of the person owed a duty." *Benkert v. Med. Protective Co.*, 842 F.2d 144, 149 (6th Cir.1988).

The Sixth Circuit has found that "[w]here a plan administrator engages in an inadequate review of a beneficiary's claim or otherwise acts improperly in denying benefits," the culpability aspect of the *King* test is satisfied. *Shelby County Health Care Corp. v. Majestic Star Casino*, 581 F.3d 355, 377 (6th Cir.2009). A paper review that fails to take treating physicians' opinions into account is an example of an inadequate review. *Moon v. Unum Provident Corp.*, 461 F.3d 639, 643–44 (6th Cir.2006). This factor, therefore, weighs in favor of such an award.

### 2. *Defendant's ability to satisfy an award of attorneys' fees*

Defendant does not dispute its ability to satisfy an award of attorneys' fees. This factor, therefore, weighs in favor of such an award.

### 3. *Deterrent effect of a fee award*

The key question in analyzing this third factor is … whether the fee award [will] have a deterrent effect on other plan administrators." *Gaeth*, 538 F.3d at 532. The deterrent effect on other plan administrators is likely to have more significance in a case where the defendant is highly culpable-where "deliberate misconduct is in the offing," rather than when the plan administrator has just made an "honest mistake." *Foltice*, 98 F.3d at 937. Lack

of bad faith should not impact whether a court finds fees could have a deterrent effect. *Moon*, 461 F.3d at 645.

In this case, Defendant's benefits determination does fall within the category of "misconduct" rather than just an "honest mistake." Defendant's plan administrator failed to afford any weight to the Social Security Administration's determination that the claimant was totally disabled, failed to provide any explanation for rejecting the treating physician's opinion, and provided an incomplete record to the administrator's medical consultant. Similar to the Sixth Circuit's reasoning for awarding fees in *Moon*, awarding Plaintiff's fees will warn plan administrators that "before terminating a plan participant's benefits, a plan administrator should ensure that the opinions upon which they rely to make their decisions are based on a thorough review of the administrative record." *Id.* Thus, this third *King* factor also weighs in favor of awarding attorneys' fees.

### 4. *Conferring a common benefit on Plan participants or resolving a significant legal question under ERISA*

Plaintiff filed this case for her own benefit. Accordingly, she has not sought to confer a common benefit on other plan participants. *Moon*, 461 F.3d at 645. Additionally, no significant ERISA legal question has been or will be resolved by this case. Therefore, this factor weighs against awarding attorneys' fees.

### 5. *Relative merits of the parties' positions*

The Court reinstated Plaintiff's benefits in this case. Therefore, this factor favors Plaintiff and weighs in favor of awarding attorneys' fees.

None of the factors examined above is alone dispositive. *Foltice,* 98 F.3d at 937. The factors, do, however, inform the discretion of this Court. *Id.* at 936 ("When exercising the discretion vested in the district court by 29 U.S.C. § 1132(g)(1), we have said, the district court should consider the [*King* ] factors"). On balance, four factors weigh in favor of awarding attorneys' fees, and one weighs against. Considering these *King* factors in light of the evidence on the record, this Court awards reasonable costs and attorneys' fees to Plaintiff.

## III. REASONABLENESS OF FEES

The starting point for determining the amount of reasonable attorneys' fees is the "lodestar" amount. *Imwalle v. Reliance Med. Prods., Inc.,* 515 F.3d 531, 551 (6th Cir.2008). This is calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Id.* "Where the party seeking attorney fees has established that the number of hours and the rate claimed are reasonable, the lodestar is presumed to be the reasonable fee to which counsel is entitled." *Pennsylvania v. Del. Valley Citizens Council for Clean Air,* 478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986).

### A. Hours Expended

In determining the hours reasonably expended by a prevailing party's counsel, [t]he question is not whether a party prevailed on a particular motion or whether in hindsight the time expenditure was strictly necessary to obtain the relief requested. Rather, the standard is whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed.

*Wooldridge v. Marlene Indus. Corp.,* 898 F.2d 1169, 1173 (6th Cir.1990). Plaintiff submits that 151.4 hours were reasonably expended by her counsel on this case for a total of $33,549.00 in attorney fees. (Doc. 35, Ex. 2; Doc. 43). Defendant has objected in part to the hours Plaintiff has claimed. (Doc. 48).

Defendant claims that Plaintiff's invoices in support of her motion for attorneys' fees include $6,507 in charges for time spent in *Holler v. Hartford Life & Accident Ins. Co.,* Case No. 1:06cv405, in which Plaintiff challenged Hartford's right to apply certain offsets in calculating payments. (Doc. 48). The parties and the Court have referred to the offset action as "Holler II." [3] The District Court in *Holler II* ruled in Hartford's favor. *See* 1:06cv405 at Doc. 28. Although Plaintiff appealed and the case was settled during the appeal, the underlying judgment was not vacated or reversed.[4] Therefore, Defendant argues that the time counsel spent in *Holler II* should not be allowed as recoverable fees. Because Plaintiff did not object to this argument, the Court will exclude all fees incurred in *Holler II.*

After reviewing counsel's billing records, the Court finds the remaining hours reasonable.

### B. Fee Enhancement

■ In addition to the requested attorneys' fees and costs, Plaintiff requests an enhancement of two times the requested fee award to punish Defendant for its bad faith. (Doc. 43). Plaintiff does not provide any legal support for this request.

---

**3.** *Holler II* concerned whether Plaintiff was disabled under the "any occupation" standard.

**4.** As a result of a mediation conducted during that appeal, Holler and Hartford agreed to a settlement that included a dismissal of the appeal (Case No. 08–3440, dismissed by Stipulation filed June 17, 2008).

The Supreme Court recognizes that the lodestar figure is the "guiding light of our fee-shifting jurisprudence" and that enhancement of attorneys' fees "would likely duplicate in substantial part factors already subsumed in the lodestar." *City of Burlington v. Dague*, 505 U.S. 557, 562, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992). Plaintiff's contention that an enhancement would serve as a deterrent is unpersuasive because that factor was already considered in the decision whether to award initially. Moreover, ERISA prohibits punitive damages, which is effectively what this Court would be awarding if it enhanced the attorneys' fees. *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993) (punitive damages are not considered "equitable relief for the purposes of 29 U.S.C. § 1132(a)(3)"). Accordingly, the Court declines to enhance Plaintiff's fee award.

### C. Reasonable Hourly Rates

This Court finds Plaintiff is eligible for attorneys' fees under 29 U.S.C. § 1132(g)(1) because she has achieved more than trivial success on the merits of her claim. This Court also finds the *King* factors weigh in favor of awarding Plaintiff's attorneys' fees, which are reasonable with regard to the number of hours and rate requested.[5] Therefore, Plaintiff's motion for attorneys' fees (Doc. 35) is **GRANTED.**

**WHEREFORE, IT IS ORDERED, ADJUDGED AND DECREED THAT:**

1. Plaintiff shall be entitled to recover from Defendant Hartford Life and Accident Insurance Company, $27,042.00 in reasonable attorneys' fees; and

2. Plaintiff shall also be entitled to recover from Defendant Hartford Life and Accident Insurance Company, $359.75 in costs.

Considering Plaintiff's reasonable attorneys' fees and costs, as well as this Court's judgment set forth in its decision and entry (Docs. 40, 41), final judgment is entered in favor of Plaintiff and against Defendant Hartford Life and Accident Insurance Company, plus recovery of attorney's fees and costs in the total amount of $27,401.75.

**IT IS SO ORDERED.**

5. Defendant does not object to the hourly rates. (Doc. 49 at ¶ 2).